Grace B. BLUE et al., Appellants,

v.

Clifton M. CRAIG, Commissioner of the North Carolina Department of Social Services, et al., Appellees.

No. 73-2183.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1974.

Decided Oct. 18, 1974.

Denison Ray, Durham, N.C., The Legal Aid Society of Durham County, North Carolina, for appellants.

William F. O'Connel, Asst. Atty. Gen. of North Carolina (Robert Morgan, Atty. Gen. of North Carolina, on brief), for appellees Clifton M. Craig and North Carolina Board of Social Services.

Lester W. Owen, Durham, N.C., on brief for appellee Thomas Hogan.

Before WINTER, RUSSELL and FIELD, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a class suit for a declaratory judgment that the North Carolina State Plan for Medical Assistance,[1] fails to provide and thus deprives North Carolina recipients of medical assistance secured to them by Section 1396a, et seq., 42 U.S.C., Title XIX of the Social Security Act, and the regulations promulgated thereunder.[2] The actual deprivation complained of is the failure to provide such recipients with "the necessary transportation to and from the providers of medical services or in the alternative, adequate reimbursement for transportation costs" as allegedly required under the Social Security Act and regulations promulgated thereunder but denied under the North Carolina regulations. Injunctive relief assuring future rights to transportation reimbursement and for reimbursement on account of past expenses of transportation are, also, sought.

The plaintiffs are all residents of Durham, North Carolina, and certified as eligible for medical assistance under the North Carolina Medical Assistance Program, as established by the State of North Carolina in cooperation with the federal government under the terms of the Social Security Act. They sue not only individually but also on behalf of the entire class of recipients similar in interest to them.

The defendants are the chief administrative officer of the North Carolina Department of Social Services, the members of the State Board of Social Services, and the Director of the Durham County Department of Social Services.

Federal jurisdiction of the action was asserted under Section 1983, 42 U.S.C., and Sections 1331, 1343(3) and 1343(4), 28 U.S.C. and Sections 2201, 2202, 28 U. S.C. Of its own motion, the District Court suggested dismissal of the action for failure to state a claim cognizable under Section 1983. After a hearing on that motion, the District Court dismissed the action, "insofar as § 1983 is relied upon to maintain this suit." It likewise found want of jurisdiction on the alternative ground under Section 1331 by reason of the absence of the jurisdictional amount. The plaintiffs have appealed from this dismissal. We reverse.

The primary theory on which the plaintiffs predicated their federal right of action and which the District Court disallowed was that their action itself was authorized by Section 1983, 42 U.S. C. and that jurisdiction of that action in turn was conferred by Sections 1343(3) and (4), 28 U.S.C., for which there is no jurisdictional amount requirement. Numerous authorities may be cited in support of the availability of § 1983 as a

---

1. North Carolina General Statutes § 108–59 through § 108–61.1, and regulations and executive orders issued thereunder.

2. 45 C.F.R. § 249.10(a)(4).

vehicle for redress of violations of rights guaranteed by the Social Security Act. Edelman v. Jordan (1974), 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; Hagans v. Lavine (1974), 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577; California Human Resources Dept. v. Java (1971), 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666; Rosado v. Wyman (1970), 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442; Goldberg v. Kelly (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; Dandridge v. Williams (1970), 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; King v. Smith (1968), 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Damico v. California (1967), 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; Anderson v. Graham (8th Cir. 1973), 492 F.2d 986; Gilliard v. Craig (D.C.N.C.1971), 331 F.Supp. 587, aff'd 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66; Roselli v. Affleck (D.C.R.I.1974), 373 F.Supp. 36; Bass v. Rockefeller (D.C.N.Y.1971), 331 F.Supp. 945, vacated on other grounds (2 Cir.), 464 F.2d 1300; Ojeda v. Hackney (D.C. Tex.1970), 319 F.Supp. 149, vacated on other grounds (5th Cir.), 452 F.2d 947. Such cases have, however, generally involved claims of constitutional deprivations,[3] and the District Court held in this case that the availability of § 1983 as a basis for an action such as this extends only to situations where the claim is constitutionally based. Specifically, it held § 1983 does not afford a right of action on account of a deprivation under "color" of a state statute or regulation of a right based merely on a federal statute. Since, under its construction of the complaint, the plaintiffs stated no constitutional deprivation as a basis for their cause of action but had rested their action entirely on the claim that the state regulation in question was simply inconsistent with the federal statute, it concluded that the plaintiffs were without any rights under Section 1983. For the reasons hereafter given, we are not certain the complaint should be so narrowly construed as premising plaintiffs' cause of action wholly on inconsistency of state regulation and federal law and as not presenting constitu-

3. *See*, for instance, Hagans v. Lavine, *supra*; Rosado v. Wyman, *supra*; Goldberg v. Kelly, *supra*.

Not infrequently, the constitutional claim is at best colorable and the decision of the Court passes over the constitutional claim and reaches its conclusion entirely on the inconsistency of the State regulation or statute with federal law. This occasioned Judge Kaufman's comment in his concurring opinion in McCall v. Shapiro (2d Cir. 1969), 416 F.2d 246, 251:

"Thus I find King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), particularly troublesome. The Court there invalidated a State 'man in the house' rule on the basis of inconsistency with the federal statute under which the AFDC program was administered. The Court found jurisdiction under 28 U.S.C. § 1343(3) ('deprivation * * * of any right * * * secured by the Constitution * * * or by any Act of Congress providing for equal rights') and 28 U.S.C. § 1343(4) ('to secure * * * relief under any Act of Congress providing for the protection of civil rights, including the right to vote'). Although basing its exception to the jurisdictional amount on constitutional claims the Court decided the case on the sole ground of supremacy of the federal statute. I note therefore, that while it took jurisdiction on a constitutional ground, the Court's ultimate decision was based solely on statutory construction. If this be a basis for jurisdiction, without regard to amount in controversy, then appellant's due process 'whipsaw' claim arguably suffices in this action. I would prefer, however, to await a clear declaration by the Supreme Court before holding in effect that any welfare recipient may obtain federal court review by urging what may be no more than a colorable constitutional claim, joined to a substantial statutory issue."

*See, also*, Johnson v. Harder (2d Cir. 1971), 438 F.2d 7, 12, where the Court, in a welfare case, said:

" * * * For the reasons outlined above, we have found that so long as a colorable constitutional claim has been raised, jurisdiction [under § 1343(3)] will properly lie."

In Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L. Rev. at 1486, 1496 (1969), the editor states:

" * * * federal jurisdiction (under § 1983) should attach if plaintiff colorably alleges a state deprivation of fourteenth amendment equal protection of the laws."

tional issues. Accepting, however, for the moment the premise that plaintiffs' action poses only a claim of an infringement by a state regulation on a right conferred merely by federal "law," we disagree with the conclusion reached by the District Court.

By its express terms § 1983, which, as one commentator has remarked, "is notable for the absence of qualification or limitation," [4] creates a cause of action for a "deprivation of any rights, privileges, or immunities secured by the Constitution *and laws*" of the United States. (Italics added) Despite this seemingly unambiguous language authorizing both statutorily-based and constitutionally-based actions, the District Court, relying on Wynn v. Indiana State Department of Public Welfare (D.C.Ind.1970), 316 F.Supp. 324, dismissed on appeal by agreement of parties under Rule 42(b), Rules of Appellate Procedure (May 26, 1971), would disregard completely the words "and laws" as a basis for a cause of action under § 1983 and would thereby deny jurisdiction under the section over statutorily-based actions.[5] It arrived at this conclusion by adopting the reasoning of *Wynn* that the words "and laws" were not in the original Civil Rights statute as adopted by Congress in 1871 but represented a gratuitous interpolation by the draftsman of the 1875 Revised Statutes, an interpolation which, even though approved in the adoption of the Revised Statutes, could not enlarge the scope of the original statute. The rationale behind this conclusion was stated in *Wynn* in these words:

"* * * No alterations in statutory coverage may be based upon * * * changes by the reviser * * *. The intention of Congress in enacting the Civil Rights Act of

1871 must be determined from the *language of the original statute*, its legislative history and subsequent judicial interpretations." (Emphasis in text) (At 328).

Such pruning of the statute by the elimination therefrom of a phrase that has appeared in the Statute, as the Revised Statutes have been phrased, for almost a century without any question being raised of its legitimacy certainly has never received the sanction of the Supreme Court, either before or after the decision in *Wynn*. In Greenwood v. Peacock (1966), 384 U.S. 808, 829–830, 86 S.Ct. 1800, 1813, 16 L.Ed.2d 944, which preceded *Wynn*, the Court said:

"* * * Under 42 U.S.C. § 1983 (1964 ed.) the officers may be made to respond in damages not only for violations of rights conferred by federal equal civil rights laws, but for violations of other federal constitutional *and statutory rights* as well." (Italics added).

Again, in Dandridge v. Williams, *supra* (397 U.S. at 475, 90 S.Ct. at 1156), the Court, in reviewing a § 1983 District Court decision invalidating a Maryland regulation under its AFDC program for inconsistency with the federal Act, declared that the decision below must "be affirmed if the Maryland regulation is in conflict with either *the federal statute* or the Constitution" (Italics added), thus equating for § 1983 considerations statutorily-based and constitutionally-based claims. And recently and subsequent to *Wynn*, the Court in Lynch v. Household Finance Corp. (1972), 405 U.S. 538, 543, n. 7, 92 S.Ct. 1113, 1117, 31 L.Ed.2d 424, reh. denied, 406 U.S. 911, 92 S.Ct. 1611, 31 L.Ed.2d 822, after summarizing much of the legislative history discussed at length in *Wynn*, con-

---

4. Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, *supra*, 82 Harv.L.Rev. 1486.

5. *See, also,* the concurring opinion of Judge Lumbard in Rosado v. Wyman (2d Cir. 1969), 414 F.2d 170, 181:

"* * * I do not believe that the claim, though one founded on a federal right, falls within the ambit of 28 U.S.C. § 1983, for it lacks *the constitutional overtones* that have been present in all the welfare cases cited by the plaintiffs which have been sustained under that section." (Italics added)

cluded with this definitive explication of the scope of 1983:

"  *   *   *   Although the original substantive provision had protected rights, privileges, or immunities secured by the Constitution, the provision in the Revised Statutes was enlarged to provide protection for rights, privileges, or immunities secured by federal law as well."

█ It seems plain from these excerpts—dicta though they may be, as *Wynn* would suggest—that the Supreme Court reads § 1983 as it is plainly phrased in the Revised Statutes and, unlike the decision below and that in *Wynn*, would give effect to the words "and laws." [6] In so doing, the Court is simply recognizing "that the Revised Statutes are positive law that repeal and supersede all previous Statutes at Large." Note, Federal Jurisdiction Over Challenges to State Welfare Programs, 72 Col.L.Rev. 1404, 1418 (1972).[7]

█ This conclusion that § 1983 authorizes actions brought "to provide protection of rights, privileges, or immunities secured by federal law" has been recognized and applied in a number of well-reasoned federal decisions. The first decision to give it such application was Bomar v. Keyes (2d Cir. 1947), 162 F.2d 136, 138–139, cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400, reh. denied, 332 U.S. 845, 68 S.Ct. 266, 92 L.Ed. 416, in which Judge Learned Hand put the matter tersely:

"  *   *   *   Although the books are full of cases under that statute concerning deprivation of rights and privileges, secured by the Constitution, we have been unable to find any in which the right or privilege at stake was secured by a 'law' of the United States. Nevertheless the language is so plain that the only question is whether this particular 'law' secured to the plaintiff a 'privilege.'"

The same conclusion was reached in Gomez v. Florida State Employment Service (5th Cir. 1969), 417 F.2d 569, a case strongly disapproved in *Wynn*. There, the Court declared that, "[I]t is true that § 1983 has quite often been used as a means of protecting *Constitutionally* guaranteed rights, particularly in the area of equal protection of the Negro. But the language of this civil rights statute is broad: it is a violation of the statute to transgress *'any'* rights, privileges, or immunities secured by the Constitution and *laws'* of the United States. (Court's italics)  *   *   *   Moreover, the Supreme Court in Peacock v. City of

---

**6.** *See, also,* Edelman v. Jordan, *supra* (Marshall and Blackmun, Justices, dissenting, 415 U.S. p. 690, 94 S.Ct. p. 1369, 39 L.Ed.2d 662):

> "But a cause of action is clearly provided by 42 U.S.C. § 1983 (1970), which in terms authorizes suits to redress deprivations of rights secured by the 'laws' of the United States."

Scholarly opinion is in accord with this view. Thus, in Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L.Rev. 1352, 1356 (1970), the author phrases the application of the statute succinctly in these words:

> "The scope of the present jurisdiction [under § 1983] may be stated in a nutshell: A person may resort to the federal courts to remedy an abuse by a state official in a matter of personal rights protected by the Federal Constitution *or laws*" (Italics added).

**7.** It is of interest in this connection that the decisions from the Second Circuit, which have denied jurisdiction in welfare deprivation suits, and which are subsequently discussed, have done so not because, in their opinion, the scope of § 1983 should be limited strictly to constitutionally-based claims. Indeed, the opinions of that Circuit seem to assume that § 1983 is sufficiently plain as to embrace statutorily-based claims. Those decisions predicate their finding of non-jurisdiction on the peculiar phraseology of § 1343(3) as it relates to statutorily-based claims. Under their construction of § 1343(3) statutorily-based claims, arising out of § 1983, are federally cognizable under § 1343(3) but only if such statutorily-based claims may be considered as presenting an equal protection issue. *See* Rosado v. Wyman, *supra* (414 F.2d at 181); McCall v. Shapiro, *supra* (416 F.2d at 250). We discuss this construction of § 1343(3), as advanced by the Second Circuit, *infra*.

Greenwood, 1964, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944, clearly indicated that § 1983 was applicable when statutory, as well as, constitutional 'rights, privileges and immunities' were involved." (at 579) And Anderson v. Graham, *supra* (492 F.2d 986), though it does not discuss the point, represents a judicial recognition of the same construction of § 1983, since the basis of the right of action, upheld in that case, was the same as that here, *i. e.*, a claim that a state AFDC regulation violated the federal law. *See*, to the same effect: Giguere v. Affleck (D.C.R.I.1974), 370 F.Supp. 154, 157–158, Roselli v. Affleck, *supra* (373 F.Supp. at 39–40), and Bass v. Rockefeller, *supra* (331 F.Supp. at 949, n. 5). We accordingly have no difficulty in resolving that this action, which seeks to invalidate a state-wide regulation alleged to deprive the plaintiffs of civil rights given them by the Social Security Act, even if regarded as being wholly statutorily-based,[8] qualifies under § 1983.

■ But § 1983, while providing a substantive right of action, is not a jurisdictional statute.[9] The "jurisdictional counterpart" for § 1983 was traditionally § 1343(3), 28 U.S.C., though jurisdiction has recently been enlarged by § 1343(4). To establish jurisdiction in this case, without satisfying the requirement for jurisdictional amount, the plaintiffs must meet the standards for qualification under § 1983 and either § 1343(3) or § 1343(4)—or both. Since § 1343(4) was only enacted in 1957, we shall first deal with jurisdiction in terms of § 1343(3), since for almost eighty years, § 1343(3), in one form or another, was regarded as the proper jurisdictional counterpart for § 1983. The two initial provisions—the substantive and the jurisdictional provisions—were initially parts of a single act, the Civil Rights Act of 1871, a single act which gave both a right of action and a grant of federal jurisdiction over that action. 17 Stat. 13.[10] As one commentator has remarked, " * * * the parent statute of sections 1983 and 1343(3) did not create new substantive rights; rather, by providing a private cause of action at law or in equity in the federal courts, the 1871 Act created an enforcement mechanism to secure the equal rights and equal protection of the laws granted by the fourteenth amendment." Herzer, Federal Jurisdiction Over Statutorily-Based Welfare Claims, 6 Harv.Civ. Rights—Civ.Liberties L.Rev. 1, 5 (1970). And the grant of jurisdiction provided by this original Act was as broad and extensive as the cause of action granted thereby. Thus, to such extent as the statute gave a right of action it conferred full federal jurisdiction for the vindication of that right of action.[11]

8. For reasons hereafter given, we are of opinion that this action may properly be deemed to be constitutionally-based.

9. *See*, Hagans v. Lavine, *supra* (415 U.S. at 535, 94 S.Ct. at 1378) :
"By its terms, § 1983 embraces petitioners' claims that the challenged regulation enforced by respondent state and county welfare officials deprives them of a right 'secured by the Constitution and laws,' *viz.*, the equal protection of the laws. But the federal cause of action created by the section does not by itself confer jurisdiction upon the Federal District Courts to adjudicate these claims."
Note, Federal Jurisdiction Over Challenges to State Welfare Programs, *supra*, 72 Col. L.Rev. at 1407:
" * * * It is important to recognize that section 1983 does not in itself confer federal jurisdiction; rather, it merely creates a cause of action. Section 1983 is a functional prerequisite to establishing jurisdiction under section 1343(3) and, for analytical purposes, is treated independently."

10. For a history of the Act of 1871 and its descendants, § 1983 and § 1343(3), *see* Lynch v. Household Finance Corp. (1972) 405 U.S. 538, 543–544, n. 7, 92 S.Ct. 1113, 31 L.Ed.2d 424.

11. *Cf.*, Cover, Establishing Federal Jurisdiction In Actions Brought to Vindicate Statutory (Federal) Rights When No Violations of Constitutional Rights are Alleged, Clearinghouse Rev., Feb.-Mar., 1969, at p. 5, 6, where, speaking to the original Act, the author said:
" * * * There was a rather clear intent to establish a right to bring any au-

In the 1875 revision, however, the 1871 Act was separated into substantive and jurisdictional provisions. The substantive part of the statute is now codified as § 1983, 42 U.S.C. and the jurisdictional part as § 1343(3), 28 U.S.C. But such separation into distinct sections was not intended to alter in any way the inter-relation of the two sections, as they had previously existed in the original Act; the substantive and jurisdictional sections were still intended to be co-extensive, just as they had been initially. No other construction can be placed on the explanatory language as used by the Reviser in discussing the rearrangement of the two sections.[12] And this was indisputably the case in connection with jurisdiction conferred on the district courts in this 1875 revision. The jurisdictional statute as it related to actions under the substantive act in district courts, under this 1875 revision, "was identical in scope with the expanded substantive provision" itself (i. e., § 1983).[13] Such misunderstanding as there is in the construction of § 1343(3) had its genesis, however, in the provision for concurrent jurisdiction in the circuit courts over an action under the substantive provision, as provided in this 1875 revision. In this jurisdictional section covering circuit courts, the violations which would support jurisdiction were defined as those deprivations which were violative of the Constitution or laws "providing for equal rights." Even though there was this difference in the language of the two jurisdictional sections, with the district court section being "identical" with the substantive provision and with the circuit court section including the additional phrase "providing for equal rights", there is no indication that, by such difference, with one jurisdictional statute referring to "civil rights" and the other to "equal rights", the Congress intended to make the jurisdiction in either the district or the circuit court over an action under § 1983 any less than the full scope of the substantive provision itself and it perceived, it would seem, no difference in the actual application of the two jurisdictional sections, so far as § 1983 was concerned.

This conclusion is confirmed by the manner in which the Reviser arranged and cross-referenced the several substantive and jurisdictional provisions in this 1875 revision. Both the circuit court and district court jurisdictional statutes were cross-referenced as supporting jurisdictionally any case maintainable under what was then Revised Statute 1979, now § 1983. This would plainly indicate that the Revisers thought the two jurisdictional statutes were identical in scope.[14] Moreover, while it may be true that all the post-war Civil Rights statutes "were obscurely and sloppily drafted, and obscurely and sloppily codified", as one commentator has remarked,[15] it would seem inconceivable that Congress, by its variance in the language of these two jurisdictional statutes in the 1875 revision, intended any variance in the jurisdiction of the two courts—the district and circuit courts. Any other construction of the two statutes would operate to nullify the statutory provision that there was concurrent (i. e., like) jurisdiction in both courts over any actions maintainable under original §

thorized Civil Rights action in the federal courts. This is the interpretation given the statute in Hart & Wechsler, Federal Courts & the Federal System, at p. 729."

12. See, Cover, Establishing Federal Jurisdiction In Actions Brought to Vindicate Statutory (Federal) Rights When No Violations of Constitutional Rights are Alleged, supra.

13. Lynch v. Household Finance Corp., supra (405 U.S. at p. 544, n. 7, 92 S.Ct. at p. 1117.

14. See, Cover, supra, where this point is carefully outlined.

15. Amsterdam, Criminal Prosecutions Affecting Federal Guaranteed Civil Rights: Federal and Habeas Corpus Jurisdiction to Abort State Trials, 113 U. of Pa.L.Rev. 793, 871, n. 311 (1965).

1983, and would create a dichotomy in the application of the two jurisdictional provisions never intended or contemplated by Congress.

■ Nor does it seem that too much significance should be accorded the use of the phrase "equal rights" in the circuit court jurisdictional statute. The term " 'equal protection' * * * had no significant history prior to incorporation in the fourteenth amendment", and, in its incorporation in that Amendment, it "was given 'only general attention' by the Congress." Note, Development in the Law—Equal Protection, 82 Harv.L.Rev. 1065, 1068 (1969). It was, in fact, a general term used to characterize all the post-war Civil Rights Statutes, including what is now § 1983,[16] and it was in this sense it was used—as a reference broadly by way of identification to all the enforcing legislation enacted to give effect to what was often spoken of as the "Equal Rights Amendment." This point was persuasively put in Herzer, Federal Jurisdiction Over Statutorily-Based Welfare Claims, 6 Harv.Civil Rights—Civil Liberties L. Rev. 1, 7–8 (1970):

" * * * in the process of codification and reorganization of sections 1983 and 1343(3), no clear congressional intent that the scope of 1343(3) should be narrower than the reach of section 1983 ever appeared. The crucial 'equal rights' language did not appear until the general revision of 1875, which made no substantive changes in the Act of 1871 but merely separated its substantive and jurisdictional provisions. Since the phrase was placed in a jurisdictional subsection, the equal rights language appears to have been employed solely to refer to the estranged substantive sections of the Ku Klux Klan Act rather than to limit the scope of the substantive provisions. Because the fourteenth amendment was originally intended to secure 'equal rights' to emancipated blacks, it is understandable that the revisors would use this wording to refer to the displaced substantive provisions which had been enacted to enforce the amendment. It seems illogical to infer from this history that Congress intended to limit substantially the scope of section 1983 by restricting its jurisdictional counterpart, section 1343(3), or to create causes of action under section 1983 for which it excluded jurisdiction under section 1343(3). Instead of constricting the operation of section 1343(3), the equal rights phrase should be interpreted to refer this jurisdictional section back to its substantive and coextensive partner. Since section 1983 has been expanded well beyond equal rights cases, the scope of section 1343(3) should be similarly extended."

And this, in our opinion, is the proper method of construing the term "equal rights" in this 1875 statement of the jurisdiction of the circuit courts—not so much as a term limiting the scope of the statute but rather as a term intended to spread the jurisdictional umbrella of the federal courts over any actions authorized under statutes enacted to give effect to the Fourteenth Amendment, including specifically § 1983.

■ Although circuit courts as a part of the federal judicial system were abolished in connection with the 1911 revision of the Judicial Code, this discussion of the construction to be given the statute fixing the jurisdiction of circuit courts under the 1875 revision over ac-

16. *Cf.*, People of State of New York v. Galamison (2d Cir. 1965), 342 F.2d 255, cert. denied, 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed. 2d 272:

"It should be noted that the Civil Rights Act of 1870 was considered the first enforcement act (entitled 'An Act to enforce the Right of Citizens of the United States to vote in the Several States of the Union and for other Purposes') and the Civil Rights Act of 1871 considered the second enforcement act; this would support the tendency to view them together, as the members of the same class—'any law providing for equal rights.' " (P. 282, n. 8 (Marshall, J., dissenting)).

tions authorized under § 1983 has importance because of its relation to the present phraseology of § 1343(3). In that 1911 revision the jurisdiction previously exercised by circuit courts was devolved upon the district courts and in this process, the two jurisdictional provisions supporting actions under § 1983 in the circuit and district courts were consolidated with the adoption of the jurisdictional language in the circuit court statute. As so adopted, it included the phrase, "providing for equal rights" and it is this inclusion which it is argued operated to reduce the district court's unquestioned previous jurisdiction over § 1983 actions. For the reasons already given, we do not regard the phrase "providing for equal rights" as creating any conflict with the original jurisdictional grant given the district courts. It seems clear that, in adopting the language it did in the consolidation, Congress did not intend to change the district court's jurisdiction. In fact, it disclaimed expressly any such intention.[17] It apparently was using the term "equal rights" in the same sense as it had been used in the 1875 statement of the circuit court jurisdiction as a "short-hand" reference back to all rights of actions qual-

ifying for enforcement under the various remedial statutes enacted to give effect to the mandates of the Fourteenth Amendment. And that we believe is the proper construction of 1343(3). In short, adopted as the jurisdictional counterpart of § 1983, it is to be given as broad and extensive an application as § 1983 itself.

In reaching our conclusion, we recognize that the Supreme Court has on three occasions specifically reserved decision on the applicability of 1343(3) to welfare cases in which the only issue is the inconsistency of state law with federal law,[18] and that the Second Circuit has held categorically that welfare cases such as this are not "equal rights" cases and do not qualify under 1343(3). Finding that claims arising out of a violation by a state of rights given by the Social Security Act did not "involve[s] the redress of either 'equal rights' or a 'civil right' as those terms are used in § 1343," and concluding "that the federal courts are [not] the appropriate forum" for the resolution of such claims of deprivation, the Second Circuit denied jurisdiction in Rosado v. Wyman (414 F. 2d 170, 181, rev., 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442). Though express-

17. *See* Note, Federal Judicial Review of State Welfare Practices, 67 Col.L.Rev. 84, 113 (1967):

"* * * Certainly there is no evidence that Congress intended to diminish the prior jurisdiction of the district court. Indeed, some of the brief legislative history suggests precisely the contrary—that the sole purpose was to remove any original civil rights jurisdiction from the circuit courts and to vest in the district courts whatever jurisdiction had previously existed in the two courts."

*See, also,* S.Rep. No. 3888, 61st Cong., 2d Sess., p. 2 at 50–1 (1910):

"The changes proposed by the bill are generally of form rather than substance. Where the substance of the laws would appear to be changed, it is generally because of the reorganization and consolidation of the laws."

18. The latest expression of the Supreme Court on this issue appears in Hagans v. Lavine (1974), 415 U.S. 534, n. 5, 94 S.Ct. 1377, 39 L.Ed.2d 577:

"Petitioners contend that § 1983 authorizes suits to vindicate rights under the 'laws' of the United States as well as under the Constitution and that a suit brought under § 1983 to vindicate a statutory right under the Social Security Act, is a suit under an Act of Congress 'providing for the protection of civil rights, including that right to vote' within the meaning of § 1343(4). They further argue that in any event, § 1343(3) in particular, and § 1343 in general, should be construed to invest the district courts with jurisdiction to hear any suit authorized by § 1983. These issues we also do not reach."

King v. Smith (1968), 392 U. S. 309, 312, n. 3, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118:

"We intimate no views as to whether and under what circumstances suits challenging state AFDC provisions only on the ground that they are inconsistent with the federal statute may be brought in federal courts."

The same reservation of opinion appears in Rosado v. Wyman (1970), 397 U. S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442.

ing amazement and bafflement at "the puzzle arising from the [Supreme] Court's unquestioning assumption of § 1343(3) jurisdiction in all welfare cases that have come before it," [19] and despite the reversal in *Rosado*, that Court restated this conclusion in McCall v. Shapiro (2d Cir. 1969), 416 F.2d 246, 250 and Aguayo v. Richardson (2d Cir. 1973), 473 F.2d 1090, 1101, cert. denied, 410 U.S. 921, 93 S.Ct. 1350, 35 L.Ed.2d 583.[20] To such extent as this conclusion rests on the theory that, to sustain jurisdiction under § 1343(3) over such claims would overwhelm federal courts,[21] the objection was apparently answered by the Supreme Court in its reversal of *Wyman*, in which it stated by way of justification of federal jurisdiction in the welfare area (397 U.S. at 422, 90 S. Ct. at 1222):

"* * * While we view with concern the escalating involvement of federal courts in this highly compli-

cated area of welfare benefits, one that should be formally placed under the supervision of HEW, at least in the first instance, we find not the slightest indication that Congress meant to deprive federal courts of their transitional jurisdiction to hear and decide federal questions in this field." [22]

Another ground expressed in the decisions of the Second Circuit for denial of jurisdiction is that:

"* * * Section 1983 grants jurisdiction without regard to the amount in controversy when there is an unconstitutional infringement on individual rights (e. g., speech, liberty, vote, press, religion) incapable of monetary valuation. * * * It would appear that the limited exception to the amount in controversy requirement remaining in 42 U.S.C. § 1983 which consists of suits under the Civil Rights Act of 1871 does not extend to

19. Almenares v. Wyman (2d Cir. 1971), 453 F.2d 1075 at 1082, cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815.

Moreover, in *Lynch, supra,* at p. 551, n. 20 of 405 U.S., at p. 1120 of 92 S.Ct., the Court said:

"The federal courts have produced inconsistent results regarding § 1343(3) jurisdiction of welfare claims. Compare Roberts v. Harder, 2 Cir., 440 F.2d 1229, with Alvarado v. Schmidt, D.C., 317 F.Supp. 1027. See also n. 19, *supra.* Yet, without always explaining why such interests are 'personal' rather than 'proprietary,' courts have consistently found civil rights jurisdiction over suits alleging discrimination in the issuance of business licenses. * * *."

*See, also,* Hagans v. Lavine (1974), 415 U. S. 533, n. 5, 94 S.Ct. 1377.

"Several past decisions of this Court concerning challenges by federal categorical assistance recipients to state welfare regulations have either assumed that jurisdiction existed under § 1343 or so stated without analysis."

20. This same Circuit in Bomar v. Keyes, *supra* (162 F.2d 136) had no difficulty in reaching what amounted to a contrary conclusion, though Judge Learned Hand, in *Bomar*, apparently thought so little of the jurisdictional objection based on § 1343(3) that he did not even advert to it in his opin-

ion but assumed that the jurisdictional provision under § 1343(3) was "identical" with the reach of § 1983 itself.

*See,* however, McGuire v. Amrein (D.C. Md.1951), 101 F.Supp. 414, 420, which also would take the strict lexicographer's view of the term "equal rights" in § 1343(3) rather than recognizing that the phrase "is always a notion of many shades and connotations," to be defined in its historical setting, as a general reference to all the enforcing statutes adopted under the Fourteenth Amendment. Note, 82 Harv.L.Rev. 1065, 1160 (1969).

21. *See,* McCall v. Shapiro, *supra* (416 F.2d at 250).

22. *Cf.* Zwickler v. Koota (1967), 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444, where discussing the expansion of federal jurisdiction under § 1983, the Court said:

"In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, ' * * * to guard, enforce, and protect every right granted or secured by the Constitution of the United States * * *.' * * * *."

suits involving solely money claims not related to violation of civil rights." McCall v. Shapiro, *supra* (416 F.2d at 250).

Since under this view, a welfare claim was "monetary" or "proprietary", it was held by the Second Circuit not to be within § 1983 jurisdiction. But this distinction between "proprietary" and personal liberty, was attenuated by the Second Circuit itself in Johnson v. Harder (2d Cir. 1971), 438 F.2d 7, and was laid to rest by the Supreme Court in *Lynch*. In that latter case, the Court said (405 U.S. at 551, n. 19, 92 S.Ct. at 1121):

> "As noted above, we have never adopted the property rights—personal liberties test for § 1343(3) jurisdiction. In Eisen v. Eastman, 421 F.2d 560, the Court of Appeals for the Second Circuit said that application of the test would bar many welfare claims. * * * We have, however, continually found § 1343(3) jurisdiction in such cases. *See, e. g.*, California Department of Human Resources v. Java, 402 U.S. 121, [91 S.Ct. 1347, 28 L.Ed.2d 666]; Rosado v. Wyman, 397 U.S. 397, [90 S.Ct. 1207, 25 L.Ed. 2d 442]; King v. Smith, 392 U.S. 309, [88 S.Ct. 2128, 20 L.Ed.2d 1118]; Goldberg v. Kelly, 397 U.S. 254, [90 S.Ct. 1011, 25 L.Ed.2d 287]; Dandridge v. Williams, 397 U.S. 471, [90 S.Ct. 1153, 25 L.Ed.2d 491]; Damico v. California, 389 U.S. 416, [88 S.Ct. 526, 19 L.Ed.2d 647]." [23]

■■ This argument, as advanced in *McCall* and the subsequent cases adopting its view, assumes that there is a lacuna or gap created by the inclusion of the phrase "equal rights" in § 1343(3), so far as the enforcement of a right of action under § 1983 may be had in federal court. Under this argument a case which falls clearly under § 1983 may only be prosecuted in the federal court if that claim may be regarded as one involving strictly "equal rights" as that term is construed today rather than as it was used and considered in the 1871 and 1875 Acts. What this argument really means is that while the plaintiffs may be given a right of action under § 1983 to void a denial of a federal right by a state statute or regulation, that action is not within the jurisdictional counterpart of § 1983, to-wit, § 1343(3) and their federal right may be said, as a practical matter, to be unenforceable in federal courts. But, as Professor Cover has observed "there is no indication that Congress intended that there be 1983 causes of action which could not be reached jurisdictionally by the federal court. Indeed, the whole point of the statute [*i. e.*, § 1343] is to provide a comprehensive federal remedy." Cover, *supra*, p. 24.[24] And so, far from resorting to some technical language in § 1343(3) to thwart a federal remedy, the Courts should give to the two statutes, the substantive and jurisdictional, (which were clearly intended to complement one another), a construction that is co-extensive so that the federal court may afford the aggrieved the "comprehensive federal remedy" contemplated by Congress. As Professor Cover has again stated, "[It] is of the utmost importance that some reconciliation of the statutes take place. It would be idiotic to permit subtle distinctions in language where there is no evidence of any intent to make distinctions in meaning accomplish a result which would be deplorable in any event. Only when there is no uncertainty should the courts conclude that Congress has set up a remedial system which overlooks nothing but the minor technicality of giving jurisdiction to some court. The courts should be especially reluctant to reach such a result when there is every evidence that a federal forum was a focal point of the

---

23. *See, also*, Roberts v. Harder, *supra* (440 F.2d 1229), vacated and remanded for consideration in light of *Lynch* (405 U.S. 1037, 92 S.Ct. 1319, 31 L.Ed.2d 577).

24. *Cf.*, McGaw v. Farrow (4th Cir. 1973), 472 F.2d 952, where, unlike the situation here, there is no indication in the legislative history to suggest that the gap in federal jurisdiction was not intended or contemplated.

legislation."[25] For the reasons already given, we are convinced that the jurisdiction of a federal court over an action brought under § 1983 is properly within the scope of § 1343(3). Any right of action that finds its roots in any of the civil rights legislation enacted between 1866 and 1871, as does this action, qualifies under the language of § 1343(3) as one "promoting equal rights", as such rights were envisioned in the enactment of the original Act and as used in the 1875 revision, which construction was taken over in the 1911 recodification.

■ Even if jurisdiction over this action did not exist under § 1343(3), however, it is plain, as the Court held in Gomez, jurisdiction is conferred by § 1343(4). This section provides for jurisdiction over an action "under any Act of Congress providing for the protection of civil rights * * *."[26] "Certainly § 1983 is an 'Act of Congress providing for the protection of civil rights, including the right to vote.'" Hall v. Garson (5th Cir. 1970), 430 F.2d 430, 438. McCall v. Shapiro, supra (416 F.2d 246),[27] is, however, to the contrary. The Court in that case bluntly declared that, "[T]he Social Security Act is not one 'providing for the protection of civil rights.'" (p. 249) We are not persuaded to adopt that conclusion, for which the Second Circuit offers no reason beyond the bare statement itself. The difficulty with the conclusion is that it overlooks the fact that, while the alleged illegality of the deprivation complained of finds its warrant in the Social Security Act, the actual cause of action is granted not by the Social Security Act but by § 1983, which is historically and textually a "civil rights" Act.

The editor of the Note in 72 Col.L. Rev. 1427–28, already noted, gives some support, though, to the argument that § 1343(4) will not cover a case such as this. The note points out that the legislative history of this section, which was adopted as a part of the Civil Rights Act of 1957, demonstrates that its purpose was "to ensure jurisdiction over claims based on the new statute," and suggests that the application of the provision should be restricted to that legislative purpose. But, as the Note states, the Supreme Court does not appear to have taken so restricted a view of the application of the provision. In Jones v. Alfred H. Mayer Co. (1968), 392 U.S. 409, 412, n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189, the Court approved § 1343(4) jurisdiction over a claim based on the 1866 Civil Rights Act. The Second Circuit itself took note of this action in Jones and conceded that "by its letter" the section plainly embraced cases such as these welfare cases and recognized that by its decision in Jones the Supreme Court had indicated that it intended to give the language of the section its natural import and normal construction. Eisen v. Eastman (2d Cir. 1969), 421 F.2d 560, 562, n. 2.[28] We are persuaded by the action of the Supreme Court in Jones to conclude as did the Fifth Circuit in the Gomez case that § 1343(4) is to be given the construction that its plain language justifies. So construed, it supports federal jurisdiction, despite the absence of the jurisdictional amount over this cause.

■ It has been assumed up to this point that the claim of the plaintiffs rested entirely on an inconsistency between the state regulation and the

---

25. Cover, supra, p. 25.

26. Gomez, supra (417 F.2d at pp. 578–579). To the same effect: Anderson v. Graham, supra (492 F.2d 986); Giguere v. Affleck, supra (370 F.Supp. at 157–158); Roselli v. Affleck, supra (373 F.Supp. at 39–40), and Bass v. Rockefeller, supra (331 F.Supp. at 949, n. 5).

27. This conclusion has been recently reiterated by way of a dictum in Aguayo v. Richardson (2d Cir. 1973), 473 F.2d 1090, 1101, cert. denied, 410 U. S. 921, 93 S.Ct. 1350, 35 L.Ed.2d 583.

28. There is, to say the least, obvious inconsistency in adopting an argument that denies any relevance to legislative intent in construing "equal rights" in § 1343(3) but nullifies, on the authority of so-called legislative intent, the plain language of § 1343(4).

controlling federal law and that it presented no constitutional "overtones." Of course, if such a claim does present a constitutional issue, all the authorities agree that jurisdiction may be predicated on § 1343(3). *See,* New York Dept. of Social Services v. Dublino (1973), 413 U.S. 405, 412, n. 11, 93 S.Ct. 2507, 37 L. Ed.2d 688; Aguayo v. Richardson, *supra* (473 F.2d at 1102).[29] In Townsend v. Swank (1971), 404 U.S. 282, 286, 92 S. Ct. 502, 505, 30 L.Ed.2d 448, the Court, construing the earlier decision of King v. Smith, *supra* (392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118) said that "a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." This language of *Townsend* was quoted approvingly in Carleson v. Remillard (1972), 406 U.S. 598, 600, 92 S.Ct. 1932, 32 L.Ed.2d 352, in which the Court also cited with approval Stoddard v. Fisher (3-judge ct. D.C.Me.1971), 330 F.Supp. 566, 571–572, which found in a welfare case a constitutional violation "under the Supremacy Clause." (p. 603) In Dublino v. New York State Department of Social Serv. (3-judge ct. D.C.N.Y. 1972), 348 F.Supp. 290, 295, rev., 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688, the Court, in sustaining jurisdiction under § 1343(3) over a claim of conflict between federal and state welfare laws, as one arising under the Constitution, said:

"In King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) and Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), the Court held that 'a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.' "[30]

And in the recent case of Hagans v. Lavine, *supra,* 415 U.S. 533, n. 5, 94 S. Ct. 1379 the Court recognizes the argument that a conflict between federal and state law in the administration of the welfare provisions of the Social Security Act may be "itself a constitutional matter within the meaning of § 1343(3)", though it left the resolution of the argument "for another day". It observed, however, that "when we have previously determined that state AFDC laws do not conform with the Social Security Act of HEW regulations, they have been invalidated under the Supremacy Clause. *See* Townsend v. Swank, 404 U.S. 282, 286, [92 S.Ct. 502, 505, 30 L.Ed.2d 448] (1971)." It, also, noted that Swift &

29. In Eisen v. Eastman (2d Cir. 1969), 421 F.2d 560, 565, n. 8, cert. denied, 400 U.S. 841, 91 S.Ct.2d 82, 27 L.Ed.2d 75:

"We note that in many of the cases just cited, and in some of those cited in the next paragraph in the text, attention is devoted only to 42 U.S.C. § 1983, or, if 28 U.S.C. § 1343(3) is referred to at all, the reference is merely in the proposition that if there is a cause of action under § 1983, there is jurisdiction under § 1343(3). Hornsby v. Allen, *supra,* [5 Cir.,] 326 F. 2d 605, is a prime example. While this treatment accords *with our view that in cases alleging constitutional deprivations both sections are subject to the same interpretation,* see note 5, *supra,* one cannot help forming the impression that the focus on § 1983—and the neglect of § 1343(3) —has contributed to the failure to deal with *Hague's* [Hague v. C.I.O. 307 U. S. 496, 59 S.Ct. 954, 83 L.Ed. 1423] interpretation of the latter section and, in some cases, the failure even to mention that decision at all." (Italics added)

In Note, Federal Jurisdiction Over Challenges to State Welfare Programs, *supra,* (72 Col.L.Rev. at 1412) the commentator, commenting on Lynch said:

"The Supreme Court thus unequivocally declared that the 'rights, privileges and immunities' that give rise to jurisdiction under section 1343(3) include *all* constitutional rights, not just those that can be classified as 'personal' under Justice Stone's test. There is therefore no doubt that section 1343(3) grants federal jurisdiction over constitutional challenges to state welfare programs." (Emphasis in text)

30. While the Supreme Court reversed this case on the merits, it affirmed the jurisdictional ruling. 413 U. S. 405, 412, n. 11, 93 S.Ct. 2507, 37 L.Ed.2d 688.

Co. v. Wickham (1965), 382 U.S. 111, 125, 86 S.Ct. 258, 15 L.Ed.2d 194, had assumed "that a suit to have a state statute declared void and to secure the benefits of the federal statute with which the state law is allegedly in conflict cannot succeed without ultimate resort to the Federal Constitution—'to be sure, any determination that a state statute is void for obstructing a federal statute does rest in the Supremacy Clause of the Federal Constitution.' " Despite its reservation of decision, the Court by this language in its opinion, it would seem, has pointed inescapably to the conclusion "that the 'secured by the Constitution' language of § 1343(3) should not be construed to exclude Supremacy Clause issues" and that a claim that a state statute or regulation is inconsistent with federal law poses a constitutional issue under the Supremacy Clause, jurisdictionally cognizable under § 1343(3). This is such a case. It is true, the plaintiffs have not invoked in *haec verba* the Supremacy Clause in aid of jurisdiction but they have plead the facts that make out a violation of that constitutional provison. By alleging that the state regulation is inconsistent with the controlling federal statute, they have plead all that is required under our liberal form of pleading to make the constitutionality of the regulation an issue. As the Court in Williams v. United States (9th Cir. 1969), 405 F.2d 951, 954, citing in support Schwarz v. United States (4th Cir. 1951), 191 F.2d 618, 620, put it, "[I]f facts giving the court jurisdiction are set forth in the com-

plaint, the provision conferring jurisdiction need not be specifically pleaded." [31] After all, "[I]t is well settled that the recitation of a statute can neither deprive a court of jurisdiction nor confer jurisdiction upon it." Beeler v. United States (3d Cir. 1964), 338 F.2d 687, 689. Even where a complainant has incorrectly planted his case on one federal right, he is still entitled to maintain his action if jurisdiction can be sustained on any other ground appearing in the record. Blanchard v. Terry & Wright, Inc. (6th Cir. 1964), 331 F.2d 467, 468–469, cert. denied, 379 U.S. 831, 85 S.Ct. 62, 13 L. Ed.2d 40. And even were this not so, it would be inequitable and unjust to dismiss on jurisdictional grounds this action without giving the plaintiffs an opportunity to amend their complaint to set forth in formal terms the constitutional issue. That right is given them by Section 1653, 28 U.S.C.

Nor, for that matter, is it clear that this case does not present an "equal rights" case, as that term has come to be interpreted. In Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486, 1496 (1969), the author states:

"If by state action a class has been deprived of federal rights, or an individual so deprived on account of his membership in a class, there will probably have been a denial of equal protection of the laws." [32]

Indisputably, the plaintiffs are representative of a class that claims a deprivation of federal rights. Such a claim

---

31. *See, also,* 5 Wright & Miller, Federal Practice and Procedure, § 1209, p. 92:
"* * * Despite occasional language or judicial intimations to the contrary, a failure to name the particular statute, treaty, or section of the Constitution under which the action arises is not fatal if the remainder of the complaint shows that a federal question actually is involved or relied upon by the pleader."

32. *See, also,* Note, Developments in the Law— Equal Protection, 82 Harv.L.Rev. 1065, 1159 (1969):

"Professor Paul Freund has described the equal protection guarantee as a moral standard wrapped in a legal command which allows the Court in establishing constitutional doctrines to help shape the nation's thinking about social justice and ethical conduct. Like 'due process,' the substantive reach of 'equal protection' can hardly be determined by reference to the words of the legal wrapping alone. Of necessity, in relying upon the guarantee for decision, the Court assumes the role of constitutional sculptor as well as its narrower role of word analyst and legal logician."

sets forth under the above test at least a colorable claim of denial of equal protection and that is all that is required for jurisdiction under § 1343(3). Of course, on the merits, the classification may be found legitimate, as was the case in Dandridge v. Williams, *supra*, (397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491) but that determination on the merits is quite different from the determination of a colorable claim, sufficient for jurisdictional purposes. In *Dandridge*, the illegitimacy of the classification was sufficient for jurisdictional purposes but it was not sufficient to support a decision in favor of the plaintiffs on the merits.

It is argued, too, that jurisdiction exists under § 1331, 28 U.S.C. Since we have found jurisdiction clearly to exist under both § 1343(3) and § 1343(4), 28 U.S.C., it is unnecessary to consider this additional jurisdictional ground. We, of course, intimate no views on the merits of plaintiffs' claim but remand the cause to the District Court for the resolution of that issue.

Reversed and remanded.